HANSON BRIDGETT LLP
KATHRYN E. DOI, SBN 121979
ANDREW W. STROUD, SBN 126475
G. THOMAS RIVERA III, SBN 333556
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:    (916) 442-2348
Email: kdoi@hansonbridgett.com
       astroud@hansonbridgett.com
       trivera@hansonbridgett.com

LAW OFFICE OF REGINA M. BOYLE
REGINA M. BOYLE, SBN 164181
Post Office Box 163479
5531 7th Avenue
Sacramento, CA  95816-9479
Telephone:   (916) 930-0930
Email: rboyle@cliniclaw.com

Attorneys for Plaintiffs
COMMUNITY HEALTH CENTER ALLIANCE
FOR PATIENT ACCESS, ET AL.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| COMMUNITY HEALTH CENTER ALLIANCE FOR PATIENT ACCESS, et al.,<br><br>         Plaintiffs,<br><br>     v.<br><br>MICHELLE BAASS, Director of the California Department of Health Care Services; CHIQUITA BROOKS-LaSURE, Administrator of the Centers for Medicare and Medicaid Services,<br><br>         Defendants. | Case No. 2:20-CV-02171-JAM-KJN4<br><br>**PLAINTIFFS' REPLY BRIEF TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br><br>Judge:   Hon. John A. Mendez<br>Date:    TBD<br>Time:    TBD<br>Place:   Crtrm. 6 |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................................1

II.   ARGUMENT .....................................................................................................................1

    A.   Plaintiffs have Shown a Strong Likelihood of Success on the Merits ...........1

        1.   Plaintiffs have Shown that California's FFS System Violates their Federal Right to Reimbursement, which Defendants do not Dispute. ...........................................................................................1

        2.   The PPS System is No Substitute Because it Violates Federal Law and Does Not Cure the Defects in the FFS System. ..................2

        3.   Plaintiffs are Also Likely to Succeed on Preemption Grounds. ..........4

    B.   CMS' Other Arguments Are Without Merit.........................................................5

        1.   Plaintiffs' Motion for a TRO is Timely and Proper. ............................5

        2.   This Court has Jurisdiction Over this Action. ......................................6

    C.   The Irreparable Injury of Medi-Cal Rx is Continuing and Will Not Be Mitigated by the SPP. .........................................................................................6

    D.   Paying Plaintiffs for Their Services As Congress Intended Benefits the Public. ..........................................................................................................9

## I. INTRODUCTION

California's fee for service system ("FFS"), made front and center by Medi-Cal Rx, violates federal Medicaid law when applied to FQHCs, that's for certain. Indeed, nowhere do Defendant's refute, much less offer any evidence, to counter this fact. Nor can Defendants argue that FQHCs and their patients are not suffering harm. Lacking any counterarguments on the merits, Defendants instead offer only insults, obfuscation, and misdirection. Congress created FQHCs to insure that the nation's medically underserved communities receive quality health care and Congress devised a system to finance FQHCs in order to insure that they can continue to do so. That system works. FQHCs provide medically necessary treatment, including prescriptions, to their Medi-Cal patients each and every day. Defendants are charged with making certain that California complies with this Congressional mandate. Defendants have failed. Plaintiffs now turn to this Court in order to protect their rights guaranteed under federal law and their patients. Medi-Cal Rx must be enjoined and federal law enforced.

## II. ARGUMENT

### A. Plaintiffs have Shown a Strong Likelihood of Success on the Merits

Plaintiffs have clearly met their burden of showing there are "serious questions going to the merits" in light of significant hardships, which justify preliminary injunctive relief. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

#### 1. Plaintiffs have Shown that California's FFS System Violates their Federal Right to Reimbursement, which Defendants do not Dispute.

The Director is obligated by federal law to comply with all of the Medicaid Act's statutory requirements. *See Alaska Dept. of Health and Soc. Servs. v. Centers for Medicare and Medicaid Servs.*, 424 F.3d 931, 935 (9th Cir. 2005). Among those requirements is the reimbursement requirement of Section 1396a(bb) that obligates the State to "pay 100 percent of [FQHCs'] costs" for their services. *Tulare Pediatric Health Care Ctr. v. State Dept. of Health Care Servs.*, 41 Cal. App. 5th 163, 170-71 (2019).

///

-1-
PLAINTIFFS' REPLY BRIEF TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

18175649.4

1	Tellingly, Defendants offer no arguments or evidence to rebut Plaintiffs' showing
2	that the FFS system violates the requirements of Section 1396a(bb). *See* ECF No. 46-3
3	(Buada Decl.) ¶ 5; ECF No. 46-5 (Curtis Decl.) ¶ 6. This alone resolves the likelihood of
4	success issue, as Plaintiffs need only demonstrate that they are likely to succeed on one
5	of their causes of action for the purposes of this motion.

6	CMS, for its part, focuses only on the FFS systems' compliance with the Covered
7	Outpatient Drug Rule, and brushes off Plaintiffs' evidence that they face higher
8	dispensing costs that the FFS system fails to compensate. *See* CMS Opp'n Br. at 10-12;
9	Buada Decl. ¶ 5; Mattson Decl. at 4. Yet, CMS cites no evidence at all to refute Plaintiffs'
10	evidence that California's FFS system violates federal law as applied to Plaintiffs despite
11	having anticipated this fact in its own rulemaking. ECF 45 (FAC) ¶ 64.

12	Even the three cases from other Circuit Courts the Director cites support Plaintiffs'
13	argument. No case holds that California does not have to fully compensate FQHCs,
14	instead, the cases hold that the "current statutory scheme" requires FQHC payments
15	"equal to 100 percent" of costs." *Three Lower Cntys. Cmty. Health Servs., Inc. v.*
16	*Maryland*, 498 F.3d 294, 298 (4th Cir. 2007). Here, Plaintiffs assert that Medi-Cal Rx fails
17	to comply with this same requirement of federal law. Thus, the clear ruling of *Three*
18	*Lower Cntys.* supports Plaintiffs' argument.

19	In short, Plaintiffs have shown they are likely to succeed on their Section 1983
20	claim that the FFS system violates their federally secured right to 100% reimbursement of
21	their costs.

22	**2.	The PPS System is No Substitute Because it Violates Federal
	Law and Does Not Cure the Defects in the FFS System.**
23

24	Rather than defending the legality of the FFS methodology, the Director responds
25	that the FQHCs have the option to be reimbursed by carving the pharmacy benefit into
26	the all-inclusive prospective payment system ("PPS") per visit rate, which essentially
27	takes all of an FQHCs costs, divides them by total visits, and requires the Medi-Cal
28	program to pay the FQHCs for each encounter between a billable provider and a Medi-

Cal eligible patient (Medi-Cal's fair share of costs). See W&I Code § 14132.100(e) & (i). This argument does not support the Director's position for the following reasons:

First, the existence of the *PPS* option is not relevant to the question of whether the *FFS* methodology is valid under federal law

Second, FQHCs are not *required* to carve the pharmacy benefit into their PPS rate, and, in fact, the law expressly gives FQHCs the *option* to carve it out of their PPS rate to be reimbursed on a FFS basis. See Welf. & Inst. Code § 14132.100(k) (stating that an "FQHC … *may elect* to have pharmacy … reimbursed on a fee-for-service basis …." [Emphasis added.] FQHCs cannot be deprived of the FFS option simply because DHCS has failed to properly implement a valid right to reimbursement on a FFS basis. Plaintiffs should not be required to change their business practices in order to accommodate the violation of their federally secured right to reimbursement.

Third, the Director fails to mention three reasons that carving the pharmacy benefit into the PPS rate also violates federal law by failing to reimburse Plaintiffs their actual costs. First, the pharmacy benefit is not reimbursed on a per visit basis, because face-to-face encounters with a pharmacist are not recognized by DHCS as billable FQHC visits eligible to be reimbursed at the PPS rate. Welf. & Inst. Code § 14132.100(g)(1); *see also* Mattson Decl. ¶ 13. Plaintiffs receive no reimbursement when a patient visits a pharmacist to get their medications. Second, the costs of drugs are continuing to rise exponentially, and an increase in the cost of drugs, no matter how great, does not qualify for a rate-adjustment; *i.e.*, an FQHC will be stuck with the drug costs in year 1 indefinitely, resulting in reimbursement at far less than the *actual costs* of providing drugs to Medi-Cal beneficiaries, potentially as early as year 2.  Welf. & Inst. Code § 14132.100(e); Mattson Decl., ¶ 13. Finally, under the PPS system, DHCS automatically adjusts the rates as determined by actual costs divided by visits by an arbitrary 20 percent adjustment (the

/ / /

/ / /

/ / /

"20 percent haircut"). See Mattson Decl. ¶ 14, Ex. A. Thus, an FQHC's rate increases are not reimbursed at 100%, but rather at only 80% of its rate increase.[1]

In short, not only does the PPS rate option not cure the legal deficiencies with the FFS option, but it violates federal law as well and the Director has failed to show otherwise.

### 3. Plaintiffs are Also Likely to Succeed on Preemption Grounds.

Defendants also fail to refute the merits of Plaintiffs' preemption arguments. First, the Director ignores this Court's equitable powers to "enjoin unconstitutional actions by state and federal officers" when a plaintiff shows that "federal law immunizes him from state regulation." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327. Second, the Director grossly mischaracterizes the holding in *AIDS Healthcare Foundation. v. Douglas*, 457 Fed. Appx. 676, 678 (9th Cir. 2011). In that case, the Ninth Circuit upheld the District Court's dismissal of the complaint because the plaintiff "had not plausibly pled a claim" based on preemption, and that "no real conflict [was] spelled out" in their complaint. *Id.* It did not analyze the preemption issues presented here. Third, CMS overlooks the express language of 42 U.S.C. § 1396r-8(a)(5)(C) that conditions the States' authority to create a duplicate discount avoidance mechanism on HRSA's failure to do so within the specified time period. CMS Opp'n Br. at 13. Finally, CMS misses the point of object preemption – the state's "traditional" authority to utilize the FFS system does not allow Medi-Cal Rx, as applied to Plaintiffs, to override Congress' goals in creating the 340B Program. *Id.* Indeed, Medi-Cal Rx shifts the 340B savings from front-line healthcare providers to the State itself. The Director contemptuously describes the

---

[1] FQHCs that previously carved the pharmacy benefit out of their PPS rate have a different process if they elect to carve pharmacy back into their PPS rate. "An FQHC … that reverses its election under this subdivision shall revert to its prior rate, subject to an increase to account for all Medicare Economic Index increases occurring during the intervening time period …." Welf. & Inst. Code § 14132.100(k). The annual MEI increases hover around 1% per year and the costs of drugs has increased at a rate much greater than 1% per year. See Mattson Decl. ¶ 15. This methodology requires FQHCs to absorb drug cost increases and also will also not reimburse them their actual cost of providing the pharmacy benefit under their PPS rate.

benefit of 340B discounts as "windfall profits," yet Congress mandated that non-profit FQHCs receive the benefit of the discounts to provide health care services to the poor; if anything, the State, which provides no direct health care services whatsoever, is the one that would be receiving a "windfall profit" were these savings directed into the State's coffers instead.

### B.   CMS' Other Arguments Are Without Merit

CMS' other arguments also lack merit. CMS argues that Plaintiffs fail to identify what conduct by CMS they want to enjoin, yet admit that "Plaintiffs do not seek injunctive relief against CMS." CMS Opp'n Br. at 2:17. CMS also argues that the Mercer Report was not deficient, yet admits that Mercer concluded that prescription costs for FQHCs "could not be estimated." CMS Opp'n Br. at 11:14 (quoting Mercer Report). It is inconceivable that a federal agency that requires a State to provide a survey that specifically addresses pharmacy costs as to FQHCs, would then base its approval of an FFS rate for FQHCs on a survey that fails to even *estimate* or solicit those costs. Finally, CMS seeks to abdicate all responsibility for its flawed decision by asserting that "CMS has no authority to second guess" a State's decision as to how to cover pharmacy benefits. (CMS Oppo. at 12:24.) Plaintiffs are not asking CMS to "second guess" the State. They are asking CMS to do its job and ensure the State's proposal is in compliance with federal Medicaid law.

#### 1.   Plaintiffs' Motion for a TRO is Timely and Proper.

CMS cynically contends that this action is moot because Plaintiffs filed their TRO motion too late. Yet, the question of mootness is decided at the "time the application was filed." *Sea–Land Serv., Inc. v. Int'l Longshoremen's and Warehousemen's Union*, 939 F.2d 866, 870 (9th Cir. 1991). Here the application was filed before January 1 had come and gone. Moreover, the controversy at issue is still live and therefore by definition not moot. *Id*. Finally, Plaintiffs could not have filed any sooner because prior to CMS approval, there was nothing to enjoin. The fact that CMS did not approve Medi-Cal Rx until December 29, with an effective date of January 1, and nothing but court holidays in

-5-

between, cannot be used to doom Plaintiffs' motion.[2] Plaintiffs filed their First Amended Complaint and their motion the day after CMS approved Medi-Cal Rx, and two days before it took effect. It defies reality to require any quicker action by Plaintiffs here.

### 2. This Court has Jurisdiction Over this Action.

Relying on *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 851 F.2d 1376 (9th Cir. 1988), CMS asserts that this Court lacks jurisdiction now because it dismissed the initial complaint for lack of subject matter jurisdiction. *Morongo* is inapposite because the district court did not consider the issue of subject matter jurisdiction before allowing an amended pleading. As such, the Ninth Circuit found the case had to be dismissed because subject matter jurisdiction was never present. Here, this Court considered the issue and dismissed the initial complaint, allowing Plaintiffs to file an amended complaint when, and if, CMS approved Medi-Cal Rx. Allowing leave to amend following dismissal for lack of subject matter jurisdiction is entirely proper, especially when the jurisdictional defect can be cured. *See Lewis v. Lewis* 358 F.2d 495 (9th Cir. 1966) (trial court erred in denying leave to amend to cure jurisdictional defect.); . *Burley v. One West Bank, FSB*, 2014 WL 4244026, (E.D. Cal. 2014) (dismissing for lack of subject matter jurisdiction but allowing filing of amended complaint).

### C. The Irreparable Injury of Medi-Cal Rx is Continuing and Will Not Be Mitigated by the SPP.

That Plaintiffs are experiencing irreparable harm now is beyond dispute. As soon as Medi-Cal Rx took effect any new pharmacy services that Plaintiff RFHN provides are subject to the $13.20 FFS dispensing fee that covers less than half of RFHN's $30 cost per prescription. Buada Decl. ¶ 5. Plaintiff UHC estimates an aggregate underpayment of about $300,000 that started to accrue as of January 1. *See* Curtis Decl. ¶ 6. Thus, Plaintiffs' federally-secured right to reimbursement under Section 1396a(bb) is being violated presently and continually. In such circumstances, immediate relief is warranted.

---

[2] The Director also failed to provide updates to the Court or provide 60-days' notice prior to implementation as promised at the March 9, 2021 hearing. Transcript at 22:3-24.

Moreover, patients have faced severe difficulty obtaining their medication following implementation of Medi-Cal Rx, and implementation has been far from "smooth". See Bartlett Decl. ¶¶ 3, 5-8.

Moreover, State law requires Plaintiffs to only prescribe 340B drugs to Medi-Cal patients. *See* Cal. Welf. & Inst. Code § 14105.46(b). Yet, the savings on those 340B drugs are no longer realized by Plaintiffs and will instead go to the State. Clinics like Plaintiff SCHC, who provide tens of thousands of prescriptions through contract pharmacies only, instantly lost any 340B savings. *See* Germano Decl. ¶¶ 3, 5. As the State's underpayment of Plaintiffs began January 1, Plaintiff SCHC's losses of 340B savings began January 1, and are compounding each day. Medi-Cal Rx also poses a present and severe threat to Plaintiffs' operations. In Plaintiff UHC's case, the one-two punch of FFS underpayments and the loss of 340B savings will force it to close its in-house pharmacies. Curtis Decl. ¶ 9. Though UHC may not shutter its pharmacy doors today, its harm is not "speculative" *See Gilder*, 936 F.2d at 423. The threat of being "driven out of business is sufficient to establish irreparable harm." *See L.A. Mem'l Coliseum Comm'n*, 634 F.2d 1197, 1203 (9th Cir. 1980).

Tellingly, the Director effectively concedes harm to Plaintiffs by asserting that Plaintiffs should have taken action to "mitigate any anticipated financial consequences" before CMS even approved Medi-Cal Rx. Director Opp'n. Br. at 15. However, it is not Plaintiffs' obligation to change their practices in order to allow the State to "shirk its responsibility to pay health centers' full costs" under the FFS system that Medi-Cal Rx imposes. *Tulare Pediatric*, 41 Cal. App. 5th at 171. Nor has the Director cited any precedent for the novel proposition that a Plaintiff must make preparations now so that the State can violate its civil rights later.

Defendants' arguments that Plaintiffs' harm is not imminent are also disingenuous. The Director speculates that "Plaintiffs…will likely continue receiving payment from managed care plans for services provided *prior to* January 1, 2022, for at least another month." Director Oppo. at p. 15 [emphasis added]. Yet, any claims submitted "prior to

January 1" are irrelevant to the new claims processes and inadequate reimbursement that Plaintiffs face under Medi-Cal Rx *now*. Waiting for an injunction "would not address the current harms" that Plaintiffs are experiencing each day that Medi-Cal Rx is in effect. *See E. E. v. California*, No. 21-CV-07585-SI, 2021 WL 5139660, at *15 (N.D. Cal. Nov. 4, 2021) (finding irreparable harm where the plaintiffs provided details of their injuries that were occurring "every day").

Defendants also argue that Plaintiffs must wait for their harm to "accrue" during what they assume is the "limited time needed to hear a motion for a preliminary injunction." Director Oppo. at 15; CMS Oppo. at 14-15. Defendants' position that Plaintiffs must both show and suffer the full magnitude of harm they face in order to justify a TRO, runs contrary to well-established law. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 715 (9th Cir. 1999) ( preliminary junction is appropriate where there is "a significant threat of irreparable injury, irrespective of the magnitude"); *see also California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (same).

The Director also offers up the supplemental payment pool ("SPP") as mitigation of the harm Plaintiffs will suffer thus acknowledging that Plaintiffs will indeed suffer harm as a result of Medi-Cal Rx. However, it is disingenuous for the Director to offer up the SPP as mitigation at all. Indeed, the Director only recently submitted a State Plan Amendment to CMS intended to establish the SPP, and CMS has not yet approved the SPA. Therefore, the SPP does not currently exist and will not mitigate anything now. The Director also optimistically claims that the budgeted amount "is expected to grow" in Fiscal Year 2022-23, yet there is also no guarantee that any amount will be budgeted for the SPP in Fiscal Year 2022-23, or in any subsequent year, and there is also no guarantee that the legislature will approve the request even if it were made. Plaintiffs can neither pay their bills nor serve their patients with illusory or speculative funds. [3] . The

---

[3] Indeed, according to notes of a CMS-DHCS discussion of Medi-Cal Rx on November 29, 2021, the Department acknowledged, "The pool is not intended to fully

SPP is an abstract distraction and should be given no weight in the consideration of whether a TRO should be granted.

Plaintiffs have demonstrated the irreparable harm Medi-Cal Rx poses, harm that is occurring now and continues absent immediate injunctive relief. *See Baldwin*, 2010 WL 2384588, at *2. Plaintiffs sought to "preserve the status quo" of the managed care system and avoid disruption, but Defendants' actions made that impossible. Medi-Cal Rx is harming and will continue to harm Plaintiffs and their patients each and every day.

### D. Paying Plaintiffs for Their Services As Congress Intended Benefits the Public.

Congress created FQHCs to guarantee that under-served communities receive quality health care and Congress required that the states reimburse FQHCs at 100% of their costs so they could provide those services. Congress also created the 340B program to benefit FQHCs by giving them the benefit of discounted drug prices to invest in patient services. Congress did not create the 340B Program for the benefit of the State, nor intend for FQHCs to be a conduit for the State to skim off savings on prescription drugs. Yet, that is precisely what Medi-Cal Rx does. Medi-Cal Rx does not serve the public benefit as defined by Congress. It is a perversion of that public benefit. And it violates federal law. Therefore, it must be enjoined now.

DATED:  January 7, 2022                                    HANSON BRIDGETT LLP

By: ___*/s/ Kathryn E. Doi*___
KATHRYN E. DOI
ANDREW W. STROUD
G. THOMAS RIVERA III
Attorneys for Plaintiffs
COMMUNITY HEALTH CENTER ALLIANCE
FOR PATIENT ACCESS, ET AL.

---

offset any revenue losses experienced by FQHCs due to the Medi-Cal Rx carve-out." Doi decl., Ex. B [ECF 46-6, p.34]. The reasons why the SPP does not equitably mitigate the impact of the loss of 340B savings are also explained in the CHCAPA letter to CMS dated December 21, 2021. Doi decl., Ex. F [ECF 46-6, pp.23-29].

DATED: January 7, 2022

LAW OFFICES OF REGINA M. BOYLE

By:    */s/ Regina M. Boyle*
REGINA M. BOYLE
Attorneys for Plaintiffs
COMMUNITY HEALTH CENTER ALLIANCE
FOR PATIENT ACCESS, et al.